854 F.2d 135
 1988-2 Trade Cases 68,179, 11 Fed.R.Serv.3d 1545
 KERASOTES MICHIGAN THEATRES, INC., Plaintiffs, Counter
Defendants-Appellees,
v.
NATIONAL AMUSEMENTS, INC., Defendant, Counter Plaintiff-Appellant,
George G. Kerasotes, Anthony A. Kerasotes, Marjorie
Kerasotes, Louis G. Kerasotes, John G. Kerasotes, Robert A.
Kerasotes, Dennis Kerasotes, Dan Stone, Kerasotes Indiana
Theatres, Inc., Kerasotes Administration Company, Kerasotes
Illinois Theatres, Inc., Kerasotes Missouri Theatres, Inc.,
Kerasotes Iowa Theatres, Inc., Louis Kerasotes Corporation
and George G. Kerasotes Corporation, Counter Defendants-Appellees.
 No. 87-1887.
 United States Court of Appeals,
Sixth Circuit.
 Aug. 12, 1988.
Rehearing and Rehearing En Banc Denied Oct. 3, 1988.
 
 Eugene Driker (argued), Elaine Fieldman, Ellen M. Nerring, Barris, Sott, Denn & Driker, Detroit, Mich., for defendant, counter plaintiff-appellant.
 H.C. Goplerud, David A. Ettinger (argued), Honigman, Miller, Schwartz & Cohn, John T. Walton, Jr., Detroit, Mich., Joseph Giffin, Chadwell & Kayser, Ltd., Chicago, Ill., for plaintiffs, counter defendants-appellees.
 Before MARTIN and WELLFORD, Circuit Judges, and GIBBONS, District Judge.*
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 National Amusements, Inc., appeals from the Rule 12(b)(6) dismissal of its antitrust counterclaim brought against Kerasotes Michigan Theatres, Inc. Because we believe National's claim was improvidently dismissed, we reverse.
 
 
 2
 National and Kerasotes are the sole motion picture exhibitors in the Flint, Michigan area. Each owns a significant number of theatres in other cities. Litigation between these parties commenced when Kerasotes filed suit alleging that National had used its economic leverage in areas other than Flint to obtain exclusive exhibition rights to films in Flint. In response to this claim, which suit is still in the pre-trial stages, National asserted a counterclaim that Kerasotes had used its monopoly and market position in other geographical regions to coerce distributors into providing them first run films in the Flint area. The district court dismissed National's counterclaim, however, under F.R.Civ.P. 12(b)(6). 658 F.Supp. 1514. This was done before any discovery was taken on the counterclaim.
 
 
 3
 Kerasotes began competing in the Flint area in late 1984 when it purchased four indoor movie theatres. The four theatres have eleven screens. At the time, National owned and operated two indoor theatres having a total of ten screens. According to the counterclaim, which in an appeal from a dismissal under Rule 12(b)(6) must be accepted as true, Kerasotes' theatres are old and poorly run whereas National's theatres are among the most luxurious in the country. National alleges that after Kerasotes purchased these theatres, Kerasotes sought to avoid competing with National by trying to arrange a "split" with National for the showing of certain films. After failing in this effort, National alleges, Kerasotes began to use its monopoly position in other geographical markets to obtain films in the Flint market, films Kerasotes would not have otherwise been able to obtain. National alleges in its counterclaim that Karasotes' behavior violated Sections 1 and 2 of the Sherman Act as well as Michigan antitrust statutes.
 
 
 4
 The district court dismissed these claims, holding that because Kerasotes did not possess a dominant position in the Flint market where it competed with National, Kerasotes' behavior could not have been injurious to competition. Thus, Kerasotes was insulated from antitrust liability. On appeal, National argues only that the district court erred in dismissing its claim that Kerasotes had attempted to leverage its monopoly position in violation of section 2 of the Sherman Act.
 
 
 5
 Motions made pursuant to Rule 12(b)(6) test whether a cognizable claim has been adequately alleged in a complaint. Rule 8(a) sets out the requirement that pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief...." Thus, when reviewing a Rule 12(b)(6) motion, we must accept as true all factual allegations in the complaint. Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir.1983), cert. denied, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). As we stated in Nishiyama v. Dickson County, Tenn., 814 F.2d 277, 279 (6th Cir.1987), a "court must deny the motion to dismiss unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." In an antitrust action, moreover, "the complaint need only allege sufficient facts from which the court can discern the elements of an injury resulting from an act forbidden by the antitrust laws." Newman v. Universal Pictures, 813 F.2d 1519, 1522 (9th Cir.1987).
 
 
 6
 We believe National has adequately alleged a viable antitrust cause of action sufficient at least to defeat a Rule 12(b)(6) dismissal. Kerasotes' alleged behavior, using its dominant market position in non-Flint areas to obtain first run films in Flint, which they would not have been able to obtain in a competitive process, does indeed constitute "leveraging," which is forbidden by the antitrust laws. In White and White, Inc. v. American Hospital Supply Corp., 723 F.2d 495, 506 (6th Cir.1983), we defined leveraging as "the use of monopoly power in one market to amplify or 'leverage,' a position in another competitive market." To run afoul of the antitrust laws, it is not necessary that the party attempting to leverage its monopoly power from a given market into a second market possess monopoly power or dominant market position in that second market. As the Second Circuit stated:
 
 
 7
 [A] firm violates section 2 by using its monopoly power in one market to gain a competitive advantage in another, albeit without an attempt to monopolize the second market.... there is no reason to allow the exercise of such power to the detriment of competition, in either the controlled market or any other. That the competition in theleveraged market may not be destroyed but merely distorted does not make it any more palatable. Social and economic effects of an extension of monopoly power militate against such conduct.
 
 
 8
 Berkey Photo, Inc. v. Eastman Kodak Co., 603 F.2d 263, 275 (2nd Cir.1979), cert. denied, 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980).
 
 
 9
 We continue to find highly persuasive the Supreme Court's treatment of such leveraging behavior in its opinion in United States v. Griffith, 334 U.S. 100, 68 S.Ct. 941, 92 L.Ed. 1236 (1948). The Supreme Court declared:
 
 
 10
 It is indeed 'unreasonable, per se, to foreclose competitors from any substantial market.' The antitrust laws are as much violated by the prevention of competition as by its destruction. It follows a fortiori that the use of monopoly power, however lawfully acquired, to foreclose competition, to gain a competitive advantage, or to destroy a competitor, is unlawful.
 
 
 11
 A man with a monopoly of theatres in any one town commands the entrance for all films into that area. If he uses that strategic position to acquire exclusive privileges in a city where he has competitors, he is employing his monopoly power as a trade weapon against his competitors.
 
 
 12
 334 U.S. at 107-108, 68 S.Ct. at 945-946.
 
 
 13
 We find the behavior discussed above by the Supreme Court to be virtually indistinguishable from that alleged by National to have been committed by Kerasotes. Such behavior is considered to be a "misuise of monopoly power under the Sherman Act" because it results in the licensing "on a non-competitive bases [of films] in what would otherwise be competitive situations." Id.
 
 
 14
 We do not believe the passage of time since the Supreme Court decided Griffith has produced any changes in our understanding of economics that militates that we abandon our view that such leveraging behavior constitutes a violation of the antitrust laws. Our improved understanding of economics has led the courts and others to recognize that there may be justifiable explanations and positive results from dealer termination agreements and other vertical agreements. Business Electronics Corp. v. Sharp Electronics Corp., --- U.S. ----, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988). In the case at hand, however, while the alleged agreement between Kerasotes and its film distributors is vertical, the effect is exclusively horizontal. The sole purpose for such an agreement is to extend a business' dominance from one market into a second market, without having to achieve that dominance in the second market by developing a superior product or as the result of other legitimate competitive advantages.
 
 
 15
 We expressly reject the district court's reasoning that leverage or the abuse of monopoly power is not actionable when the offender has not yet acquired a dominant position in the affected market. As the Supreme Court stated, "[t]he Sherman Act has consistently been read to forbid all contracts and combinations 'which tend to create a monopoly,' whether 'the tendency is a creeping one' or 'one that proceeds at full gallup". Klors v. Broadway-Hale Stores, Inc., 359 U.S. 207, 213-214, 79 S.Ct. 705, 710, 3 L.Ed.2d 741 (1959); see also, Berkey Photo, Inc. v. Eastman Kodak Co., supra, 603 F.2d at 275. Products that may be inferior should not be allowed to prosper in a particular market as a result of its producer's exploitation of its monopoly position in a second market. Under such situations, potential economic or competitive gains are not identifiable. This is, of course, most clearly so where the alleged offender has used coercion in the market where it validly possesses monopoly power to further extend that power to a second market. Finally, we observe that the antitrust laws prohibit not just the possession of monopoly power but also attempts to restrain trade and impede competition. Thus, it is not determinative that Kerasotes may not presently enjoy a dominant market power position in Flint, the affected market. Furthermore, it cannot be doubted that Kerasotes' alleged conduct, if proven, had a negative impact on competition.
 
 
 16
 Because we believe that National adequately alleged a section 2 violation of the Sherman Act, that portion of the district court opinion dismissing this so called "leveraging" claim pursuant to Rule 12(b)(6) is hereby reversed.
 
 
 
 *
 The Honorable Julia S. Gibbons, United States District Judge for the Western District of Tennessee, sitting by designation