Billy LAMB and Carmon Willis,
Plaintiffs–Appellants,

v.

PHILLIP MORRIS, INC. and B.A.T. Industries, PLC, Defendants–Appellees.

No. 89–5960.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 24, 1990.
Decided Sept. 28, 1990.

John F. Lackey (argued), and John F. Lackey, Lackey & Lackey, Richmond, Ky., for plaintiffs-appellants.

Robert M. Watt, III, Stoll, Keenon & Park, Lexington, Ky., Abe Krash, Robert N. Weiner (argued), Philip W. Horton, Arnold & Porter, Washington, D.C., for Phillip Morris, Inc.

James Park, Jr. (argued), Brown, Todd & Heyburn, Lexington, Ky., for B.A.T. Industries, PLC.

Before KEITH and GUY, Circuit Judges, and BROWN, Senior Circuit Judge.

RALPH B. GUY, Jr., Circuit Judge.

In this antitrust action, plaintiffs Billy Lamb and Carmon Willis appeal from the dismissal of their claims against defendants Phillip Morris, Inc. (Phillip Morris), and B.A.T. Industries, PLC (B.A.T.). Because we find that the act of state doctrine presents no impediment to adjudication of the plaintiffs' antitrust claims, we reverse the district court's dismissal of those claims and remand them for further consideration. Since we find that no private right of action is available under the Foreign Corrupt Practices Act of 1977 (FCPA), 15 U.S.C. §§ 78dd–1, 78dd–2, we affirm the dismissal of the plaintiffs' FCPA claim.

## I.

In accordance with *Kerasotes Michigan Theatres, Inc. v. National Amusements, Inc.*, 854 F.2d 135 (6th Cir.1988), we must accept as true all factual allegations in the complaint when reviewing the granting of a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. *Id.* at 136. Moreover, dismissal under Rule 12(b)(6) is appropriate only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *accord Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987). Therefore, we shall set forth the facts as alleged in the plaintiffs' complaint.

Plaintiffs Lamb and Willis, along with various other Kentucky growers,[1] produce burley tobacco for use in cigarettes and other tobacco products. Defendants Phillip Morris and B.A.T. routinely purchase such tobacco not only from Kentucky markets serviced by the plaintiffs, but also from producers in several foreign countries. Thus, tobacco grown in Kentucky competes directly with tobacco grown abroad, and any purchases from foreign suppliers necessarily reduce the defendants' purchase of domestic tobacco.

On May 14, 1982, a Phillip Morris subsidiary known as C.A. Tabacalera National and a B.A.T. subsidiary known as C.A. Cigarrera Bigott, SUCS. entered into a contract with La Fundacion Del Nino (the Children's Foundation) of Caracas, Venezuela. The agreement was signed on behalf of the Children's Foundation by the organization's president, the wife of the then President of Venezuela. Under the terms of the agreement, the two subsidiaries were to make periodic donations to the Children's Foundation totalling approximately $12.5 million dollars. In exchange, the subsidiaries were to obtain price controls on Venezuelan tobacco, elimination of controls on retail cigarette prices in Venezuela, tax deductions for the donations, and assurances that existing tax rates applicable to tobacco companies would not be increased. According to the plaintiffs' complaint, the defendants have arranged similar contracts in Argentina, Brazil, Costa Rica, Mexico, and Nicaragua.

In the plaintiffs' view, the donations promised by the defendants' subsidiaries amount to unlawful inducements designed and intended to restrain trade. The plaintiffs assert that such arrangements result in artificial depression of tobacco prices to the detriment of domestic tobacco growers, while ensuring lucrative retail prices for tobacco products sold abroad. In this action, the plaintiffs seek redress in the forms of treble damages and injunctive relief principally for the former result—reduction in domestic tobacco prices.

The plaintiffs filed their complaint alleging violations of federal antitrust laws on August 21, 1985, in the United States District Court for the Eastern District of Kentucky. Both defendants promptly moved for dismissal on several grounds. The plaintiffs then sought leave to amend their complaint to add a claim under the FCPA. On June 28, 1989, the district court dismissed the plaintiffs' antitrust claims as barred by the act of state doctrine, and dismissed the FCPA claim as an impermissible private action. This appeal followed.

The plaintiffs contend that the district court erroneously abdicated its authority to consider the antitrust claims asserted in the complaint by invoking the act of state doctrine. The plaintiffs further assert that the district court erred in prohibiting them from pursuing a private cause of action under the FCPA. We shall address these two issues individually. Our review of the district court's ruling on the defendants' Rule 12(b)(6) motion is *de novo*. *See, e.g.*,

---

1. The plaintiffs' complaint requests certification under Federal Rule of Civil Procedure 23 of a class encompassing "all persons who sold burley tobacco grown within the counties of Scott, Madison, Jessamine, Bourbon, Fayette, Mercer, Clark, and Woodford in the State of Kentucky, who consummated such sales of burley tobacco within the past six (6) years." As the district court observed in dismissing the complaint, however, the plaintiffs never moved for class certification.

*Peck v. General Motors Corp.*, 894 F.2d 844, 846 (6th Cir.1990).

## II.

■ "The act of state doctrine in its traditional formulation precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." [2] *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401, 84 S.Ct. 923, 926, 11 L.Ed.2d 804 (1964). As the Supreme Court explained in *Underhill v. Hernandez*, 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456 (1897), this concept is based on the notion that "[e]very sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory." *Id.* at 252, 18 S.Ct. at 84; *see also Oetjen v. Central Leather Co.*, 246 U.S. 297, 303, 38 S.Ct. 309, 311, 62 L.Ed. 726 (1918) (reaffirming *Underhill*). The evolution of the act of state doctrine has revealed that it is not "compelled either by the inherent nature of sovereign authority ... or by some principle of international law." *Sabbatino*, 376 U.S. at 421, 84 S.Ct. at 936. Although the text of the Constitution similarly "does not require the act of state doctrine," *id.* at 423, 84 S.Ct. at 938, the doctrine has " 'constitutional' underpinnings ... aris[ing] out of the basic relationships between branches of government in a system of separation of powers" and based upon "the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder" the conduct of foreign affairs. *Id.; see also W.S. Kirkpatrick & Co. v. Environmental Tec-*

*tonics Corp., Int'l,* —— U.S. ——, 110 S.Ct. 701, 704, 107 L.Ed.2d 816 (1990). In this respect, "[t]he act of state doctrine is not a jurisdictional limit on courts, but rather is 'a prudential doctrine designed to avoid judicial action in sensitive areas.' " [3] *Liu v. Republic of China,* 892 F.2d 1419, 1431 (9th Cir.1989); *accord Riedel v. Bancam, S.A.,* 792 F.2d 587, 592 (6th Cir.1986).

Although the act of state doctrine typically involves an assessment of "the likely impact on international relations that would result from judicial consideration of the foreign sovereign's act," *Allied Bank Int'l v. Banco Credito Agricola de Cartago,* 757 F.2d 516, 520–21 (2d Cir.), *cert. dismissed,* 473 U.S. 934, 106 S.Ct. 30, 87 L.Ed.2d 706 (1985), we must initially determine whether the defendants in this case have established the factual predicate for application of the act of state doctrine.[4] While act of state analysis is not generally guided by "an inflexible and all-encompassing rule," *see Sabbatino,* 376 U.S. at 428, 84 S.Ct. at 940, the Supreme Court recently indicated that, as a threshold matter, "[a]ct of state issues only arise when a court must decide—that is, when the outcome of the case turns upon—the effect of official action by a foreign sovereign." *Kirkpatrick,* 110 S.Ct. at 705 (emphasis omitted). Here, the defendants have failed to make such a showing.

The defendants view Justice Holmes' discussion of the act of state doctrine in *American Banana Co. v. United Fruit Co.,* 213 U.S. 347, 357–58, 29 S.Ct. 511, 513, 53 L.Ed. 826 (1909), as supportive of their position that the doctrine may be applied if a legal claim impugns the motivations of a foreign state. *See also Clayco Petroleum*

---

**2.** The Second Circuit has stated that "[s]uch an inquiry is foreclosed ... regardless of whether the foreign government is named as a party to the suit or whether the validity of its actions are directly challenged in the pleadings." *O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana, S.A.,* 830 F.2d 449, 452 (2d Cir.1987), *cert. denied,* 488 U.S. 923, 109 S.Ct. 303, 102 L.Ed.2d 322 (1988).

**3.** Because the act of state doctrine imposes no limitations upon the jurisdiction of the federal courts, "[a] motion to dismiss based on the act

of state doctrine raises ... a Rule 12(b)(6) objection, not a jurisdictional defect." *Timberlane Lumber Co. v. Bank of America, N.T. & S.A.,* 549 F.2d 597, 602 (9th Cir.1976).

**4.** "The party moving for the [act of state] doctrine's application has the burden of proving that dismissal is an appropriate response to the circumstances presented in the case." *Environmental Tectonics v. W.S. Kirkpatrick, Inc.,* 847 F.2d 1052, 1058 (3d Cir.1988), *aff'd,* —— U.S. ——, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990).

*Corp. v. Occidental Petroleum Corp.*, 712 F.2d 404, 407–08 (9th Cir.1983), *cert. denied*, 464 U.S. 1040, 104 S.Ct. 703, 79 L.Ed.2d 168 (1984); *Hunt v. Mobil Oil Corp.*, 550 F.2d 68, 77 (2d Cir.1977). However, the Supreme Court's recent decision in *Kirkpatrick*—a case involving civil RICO and Robinson–Patman Act claims relating to a New Jersey corporation's bribery of Nigerian officials—undercuts their contention by explicitly eschewing the logic of *American Banana*.[5] The Court explained in *Kirkpatrick* that the act of state doctrine in its present formulation "does not establish an exception for cases and controversies that may embarrass foreign governments, but merely requires that, in the process of deciding, the acts of foreign sovereigns taken within their own jurisdiction shall be deemed valid." 110 S.Ct. at 707. In reaching this conclusion and permitting the plaintiffs' claims to go forward, Justice Scalia's opinion for the unanimous Court held that the act of state doctrine does not "bar[ ] a court in the United States from entertaining a cause of action that . . . require[s] imputing to foreign officials an unlawful motivation (the obtaining of bribes) in the performance of . . . an official act." *Id.* at 702. Like the bribes underlying the civil RICO and Robinson–Patman Act claims in *Kirkpatrick*, the

payments made by the defendants in this case to induce favorable action in Venezuela may support the plaintiffs' antitrust claims.[6] Because the antitrust claims at issue in this suit merely call into question the contracting parties' motivations and the resulting anticompetitive effects of their agreement, not the validity of any foreign sovereign act, the district court erred in applying the act of state doctrine to dismiss the plaintiffs' claims. Accordingly, the order of dismissal is REVERSED insofar as the antitrust claims are concerned; the claims shall be REMANDED for further consideration.[7]

### III.

■ Although the Foreign Corrupt Practices Act was enacted more than a decade ago,[8] the question of whether an implied private right of action exists under the FCPA apparently is one of first impression at the federal appellate level.[9] Thus, we must analyze the FCPA, which generally forbids issuers of registered securities and other "domestic concerns" (as well as their agents) to endeavor to influence foreign officials by offering, promising, or giving "anything of value," *see* 15 U.S.C. §§ 78dd–1(a), 78dd–2(a), to ascertain whether the plaintiffs may assert a private cause

---

**5.** In the *Kirkpatrick* Court's estimation, *"American Banana* was squarely decided on the ground (later substantially overruled) that the antitrust laws had no extraterritorial application," 110 S.Ct. at 705–06 (citation omitted), and any act of state discussion in *American Banana* was nothing more than dictum subsequently "overcome" by *United States v. Sisal Sales Corp.*, 274 U.S. 268, 47 S.Ct. 592, 71 L.Ed. 1042 (1927). *See Kirkpatrick*, 110 S.Ct. at 706. The *Kirkpatrick* Court, in fact, cited *Sisal* for the proposition that, *"American Banana* notwithstanding, the defendant's actions in obtaining Mexico's enactment of 'discriminating legislation' could form part of the basis for suit under the United States antitrust laws." *Id.*

**6.** The defendants conceded at oral argument that *Kirkpatrick* undercut the rationale for the district court's decision with regard to the act of state doctrine.

**7.** In rejecting the district court's invocation of the act of state doctrine, we do not pass judgment on whether the plaintiffs have set forth viable antitrust claims. The defendants interposed several alternative justifications for dismissal that the district court has not yet addressed. The defendants are free to raise these arguments to support a subsequent motion for dismissal or summary judgment following remand.

**8.** The FCPA, initially enacted in 1977, *see* Pub.L. No. 95–213, §§ 103(a), 104, 91 Stat. 1494, 1495–98 (1977), has since been reenacted and amended by the Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, §§ 5003(a), 5003(c), 102 Stat. 1107, 1415–24 (1988) (codified at 15 U.S.C. §§ 78dd–1, 78dd–2).

**9.** The Ninth Circuit has applied the act of state doctrine to bar a private plaintiff's claim under the FCPA. *See Clayco*, 712 F.2d at 408–09. *Clayco*, however, offers no guidance on the issue before us. Additionally, at least one district court has referred to the issue without resolving it. *See, e.g., Instituto Nacional de Comercializacion Agricola (Indeca) v. Continental Illinois Nat'l Bank and Trust Co.*, 576 F.Supp. 985, 990 & n. 4 (N.D.Ill.1983).

of action. The Supreme Court recently explained that:

> In determining whether to infer a private cause of action from a federal statute, our focal point is Congress' intent in enacting the statute. As guides for discerning that intent, we have relied on the four factors set out in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975), along with other tools of statutory construction. Our focus on congressional intent does not mean that we require evidence that Members of Congress, in enacting the statute, actually had in mind the creation of a private cause of action.... The intent of Congress remains the ultimate issue, however, and "unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist."

*Thompson v. Thompson*, 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988) (citations omitted). Thus, as *Thompson* makes clear, our central focus is on congressional intent, *see also Karahalios v. National Fed'n of Fed. Employees, Local 1263*, 489 U.S. 527, 109 S.Ct. 1282, 1286, 103 L.Ed.2d 539 (1989), "with an eye toward" the four *Cort* factors: (1) whether the plaintiffs are among "the class for whose *especial* benefit" the statute was enacted; (2) whether the legislative history suggests congressional intent to prescribe or proscribe a private cause of action; (3) whether "implying such a remedy for the plaintiff would be 'consistent with the underlying purposes of the legislative scheme'"; and (4) whether the cause of action is "'one traditionally relegated to state law, in an area basically the concern of States, so that it would be inappropriate to infer a cause of action.'" *See Chairez v. United States I.N.S.*, 790 F.2d 544, 546 (6th Cir.1986) (quoting *Cort*, 422 U.S. at 78).

**A. "Especial Beneficiaries"**

■ The defendants contend, and we agree, that the FCPA was designed with the assistance of the Securities and Exchange Commission (SEC) to aid federal law enforcement agencies in curbing bribes of foreign officials. According to the Senate report regarding the FCPA, the Senate Committee on Banking, Housing and Urban Affairs initially "ordered reported a bill, S. 3664, which incorporated the SEC's recommendations and a direct prohibition against the payment of overseas bribes by any U.S. business concern."[10] S.Rep. No. 114, 95th Cong., 1st Sess. 2, *reprinted in* 1977 U.S.Code Cong. & Admin.News 4098, 4099. As the Senate report indicates, the resulting enactment of the FCPA represents a legislative endeavor to promote confidence in international trading relationships and domestic markets; *see id.* at 3, 1977 U.S.Code Cong. & Admin.News at 4100–01; the authorization of stringent criminal penalties amplifies the foreign policy and law enforcement considerations underlying the FCPA. *See, e.g.*, 15 U.S.C. § 78dd–2(g). The House Conference report refers to the "jurisdictional, enforcement, and diplomatic difficulties" of broadening the FCPA's reach, *see* H.R.Conf.Rep. No. 831, 95th Cong., 1st Sess. 14, *reprinted in* 1977 U.S.Code Cong. & Admin.News 4121, 4126, thereby addressing concerns typically of special interest to law enforcement officials. In light of these comments and the general tenor of the FCPA itself, which requires the Attorney General to participate actively in encouraging and supervising compliance with the Act,[11] *see, e.g.*, 15

---

**10.** S. 3664, which the committee did not order reported until the end of the 94th Congress in 1976, never became law. However, "[i]n the first session of the 95th Congress, ... Senator Proxmire introduced an exact replica of S. 3664 ... as S. 305 on January 18, 1977, and the bill was again referred to the Senate Banking Committee." *Lewis v. Sporck*, 612 F.Supp. 1316, 1329 (N.D.Cal.1985). "On May 2, 1977, the committee reported out S. 305, [which] passed the Senate on May 5, 1977." *Id.* at 1329–30 (citations omitted). Following a conference to resolve differences between S. 305 and a corresponding House bill, both the Senate and the House passed a compromise bill in December 1977 and the President signed the compromise bill into law soon thereafter. *See id.* at 1330.

**11.** The Ninth Circuit has noted that, in practice, "[t]he Justice Department and the SEC share enforcement responsibilities under the FCPA. They coordinate enforcement of the Act with

U.S.C. §§ 78dd–1(e), 78dd–2(f), we find that the FCPA was primarily designed to protect the integrity of American foreign policy and domestic markets, rather than to prevent the use of foreign resources to reduce production costs. The plaintiffs, as competitors of foreign tobacco growers and suppliers of the defendants, cannot claim the status of intended beneficiaries of the congressional enactment under scrutiny.

### B. Congressional Intent Concerning Private Rights of Action

Despite the paucity of authority in the legislative history for their position, the plaintiffs assert that Congress fully intended to permit private rights of action under the FCPA. We disagree. The plaintiffs have identified only one reference in a House report to a private right of action: "The committee intends that courts shall recognize a private cause of action based on this legislation, as they have in cases involving other provisions of the Securities Exchange Act, on behalf of persons who suffer injury as a result of prohibited corporate bribery." H.R.Rep. No. 640, 95th Cong., 1st Sess. 10 (1977). Unlike the House, the Senate initially included a provision that expressly conferred a private right of action under the FCPA on competitors. *See* S. 3379, 94th Cong., 2d Sess. § 10, 122 Cong.Rec. 12,605, 12,607 (1976). Significantly, the Senate committee deleted that provision. *See* S.Rep. No. 1031, 94th Cong., 2d Sess. 13 (1976). The availability of a private right of action apparently was never resolved (or perhaps even raised) at the conference that ultimately produced the compromise bill passed by both houses and signed into law; neither the FCPA as enacted nor the conference report mentions such a cause of action. *See* 15 U.S.C.

§§ 78dd–1, 78dd–2; H.R.Conf.Rep. No. 831, 95th Cong., 1st Sess., *reprinted in* 1977 U.S.Code Cong. & Admin.News 4121. Because the conference report accompanying the final legislative compromise makes no mention of a private right of action, we infer that Congress intended no such result.[12] Accordingly, we reject the plaintiffs' assertion that one isolated comment in an earlier House report mandates recognition of a private right of action.[13]

### C. Consistency with the Legislative Scheme

Recognition of the plaintiffs' proposed private right of action, in our view, would directly contravene the carefully tailored FCPA scheme presently in place. Congress recently expanded the Attorney General's responsibilities to include facilitating compliance with the FCPA. *See* 15 U.S.C. §§ 78dd–1(e), 78dd–2(f). Specifically, the Attorney General must "establish a procedure to provide responses to specific inquiries" by issuers of securities and other domestic concerns regarding "conformance of their conduct with the Department of Justice's [FCPA] enforcement policy...." 15 U.S.C. §§ 78dd–1(e)(1), 78dd–2(f)(1). Moreover, the Attorney General must furnish "timely guidance concerning the Department of Justice's [FCPA] enforcement policy ... to potential exporters and small businesses that are unable to obtain specialized counsel on issues pertaining to [FCPA] provisions." 15 U.S.C. §§ 78dd–1(e)(4), 78dd–2(f)(4). Because this legislative action clearly evinces a preference for compliance in lieu of prosecution, the introduction of private plaintiffs interested solely in post-violation enforcement, rather than pre-violation compliance, most assuredly would hinder congressional efforts

---

the State Department, recognizing the potential foreign policy problems of these actions." *Clayco*, 712 F.2d at 409 (footnote omitted).

**12.** In this regard, we reject the suggestion in *Jacobs v. Pabst Brewing Co.*, 549 F.Supp. 1050, 1062 (D.Del.1982), that the comment in the House report suggesting the existence of a private right of action trumps contrary statements by two conferees, thereby giving rise to a private cause of action. This sort of reasoning illustrates the problematic nature of divining

the true purpose of a conference committee by delving into reports on bills that were discussed at length and modified in conference.

**13.** Speaking only for myself, if writing on a clean slate, I would never infer a private right of action where the legislation itself is silent in that regard. If the courts stopped filling these legislative gaps, Congress would soon stop leaving this question unresolved.

to protect companies and their employees concerned about FCPA liability.

### D. Alternative Avenues of Redress

Regulation of bribery directed at foreign officials cannot be characterized as a matter traditionally relegated to state control. In this respect, implying a private right of action under the FCPA—a statutory scheme aimed at activities ordinarily undertaken abroad—would not intrude upon matters of state concern. Nevertheless, the international reach of federal antitrust laws dilutes the plaintiffs' assertion that a private cause of action under the FCPA constitutes the only viable mechanism for redressing anticompetitive behavior on a global scale. *See Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 704, 82 S.Ct. 1404, 1413, 8 L.Ed.2d 777 (1962); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 582 n. 6, 106 S.Ct. 1348, 1354 n. 6, 89 L.Ed.2d 538 (1986) ("The Sherman Act does reach conduct outside our borders, but only when the conduct has an effect on American commerce."). Because the potential for recovery under federal antitrust laws in this case belies the plaintiffs' contention that an implied private right of action under the FCPA is imperative, we attach no significance to the absence of state laws proscribing bribery of foreign officials. More importantly, since none of the *Cort* factors supports the plaintiffs' private right of action theory, we AFFIRM the district court's dismissal of the FCPA claim.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.