James R. PARRISH, Plaintiff,

v.

HBO & COMPANY, Defendant.

No. C–3–98–370.

United States District Court,
S.D. Ohio,
Western Division.

Aug. 11, 1999.

James M. Hill, O'Diam, McNamee, & Hill Co, Dayton, OH, for James R. Parrish, plaintiff.

Neil Frank Freund, Julie R. Lewis, Freund Freeze & Arnold—3, Dayton, OH, Jefferson D. Kirby, III, Ann R. Schildhammer, Atlanta, GA, for HBO & Company, defendant.

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION TO DISMISS COUNTS ONE AND TWO OF PLAINTIFF'S COMPLAINT (DOC. # 3); PLAINTIFF'S SUPPLEMENTAL STATE LAW CLAIMS DISMISSED, WITHOUT PREJUDICE; TERMINATION ENTRY

RICE, Chief Judge.

Plaintiff James Parrish initiated the instant litigation on August 31, 1998 (Doc. # 1). In his Complaint, he asserted four causes of action against Defendant HBO & Company ("HBOC"), to wit: 1) age discrimination, in violation of the Age Discrimination in Employment Act ("ADEA") (Count One); 2) age discrimination, in violation of Chapter 4112 of the Ohio Revised Code (Count Two); 3) a state law claim for breach of his commission agreement (Count Three); and 4) a state law claim for breach of his employment agreement and promissory estoppel (Count Four). Pending before the Court is Defendant's Motion to Dismiss Counts One and Two of Plaintiff's Complaint (Doc. # 3). For the reasons assigned, Defendant's Motion is SUSTAINED.

## I. Factual Background

On September 8, 1992, Parrish began employment with HBOC as a sales executive (Complaint ¶ 8). His employment was terminated on September 1, 1995, as part of HBOC's reorganization of its sales force (id. ¶ 10). Parrish filed a complaint with the Ohio Civil Rights Commission ("OCRC") on December 29, 1995, alleging that HBOC's actions constituted age discrimination (id., Ex. A; Doc. # 3, Ex. 2). The Equal Employment Opportunity Commission ("EEOC"), Cincinnati Division, received the complaint on January 3, 1996, and, pursuant to the work-sharing agreement between the OCRC and the EEOC, the charge was to be processed by the EEOC (Doc. # 3, Ex. 3). Due to the location of Defendant's business in Georgia, Plaintiff's complaint was transferred to the Atlanta Office of the EEOC for processing (see Compl., Ex. B). The EEOC issued a Notice of Right to Sue Letter to Parrish on October 31, 1996 (id.).

On January 23, 1997, Plaintiff filed suit in this Court against HBOC. See Case No. C-3-97-35, S.D.Ohio, Western Division at Dayton. In that Complaint, Plaintiff set forth claims for age discrimination, in violation of the Age Discrimination in Employment Act ("ADEA") (Count One) and in violation of Chapter 4112 of the Ohio Revised Code (Count Two); and a state law claim for breach of his commission agreement (Count Three).[1] By stipulation of the parties, that litigation was dismissed, without prejudice, pursuant to Fed.R.Civ.P. 41(a)(1), on July 31, 1998 (Case No. C-3-97-35, Doc. # 36). Parrish filed the instant litigation on August 31, 1998, thirty-one days after the voluntary dismissal of his first suit (Doc. # 1). On October 30, 1998, Defendant filed the instant Motion to Dismiss Count One, pursuant to Fed.R.Civ.P. 12(b)(6), and Count Two, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) (Doc. # 3).

## II. Standard for Defendant's Motion to Dismiss, Pursuant to Fed.R.Civ.P. 12(b)(6) (Doc. # 3)[2]

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether

---

1. The original Complaint in that case did not set forth a state law claim for breach of his employment agreement/promissory estoppel, which is included in Plaintiff's Complaint in this litigation. An Amended Complaint (Case No. C-3-97-35, Doc. # 17), which included that cause of action, was filed in that case on November 26, 1997.

2. In his Opposition Memorandum (Doc. # 17), Plaintiff concedes that his state law age discrimination claim (Count Two) is barred. See, infra, at 794-95. Accordingly, the Court need not set forth the standard for motions to dismiss, pursuant to Fed.R.Civ.P. 12(b)(1).

the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers,* 87 F.3d 176, 179 (6th Cir.) (citing *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir.1993)), *cert. denied,* 519 U.S. 1008, 117 S.Ct. 510, 136 L.Ed.2d 400 (1996); *see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Barrett v. Harrington,* 130 F.3d 246 (6th Cir.1997), *cert. denied,* 523 U.S. 1075, 118 S.Ct. 1517, 140 L.Ed.2d 670 (1998) ("In considering a motion to dismiss for failure to state a claim, the Court is required to take as true all factual allegations in the complaint."); *Lamb v. Phillip Morris, Inc.,* 915 F.2d 1024, 1025 (6th Cir.1990), *cert. denied,* 498 U.S. 1086, 111 S.Ct. 961, 112 L.Ed.2d 1048 (1991). However, the Court need not accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). A well-pleaded allegation is one that alleges specific facts and does not merely rely upon conclusory statements. The Court is to dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

### III. *Analysis of Defendant's Motion to Dismiss (Doc. # 3)*

#### A. *State Law Claim of Age Discrimination (Count Two)*

Defendant seeks dismissal of Plaintiff's claim for age discrimination, in violation of Ohio Rev.Code Ch. 4112, arguing that Parrish's claim is barred by Ohio Rev. Code § 4112.08, which provides, in pertinent part, that ". . . any person filing a charge under division (B)(1) of section 4112.05 of the Revised Code is, with respect to the unlawful discriminatory practices complained of, barred from instituting a civil action under section 4112.14 or division (N) of section 4112.02 of the Revised Code." Ohio Rev.Code § 4112.08; *Smith v. L.M. Berry & Co.,* 654 F.Supp. 11, 14 (S.D.Ohio 1986) ("[A]n individual who files a charge with OCRC is barred from bringing a civil action under either Section 4101.17 [now § 4112.14] or Section 4112.02(N)."). HBOC further argues that, even if Parrish could bring suit in this Court, his claim is time-barred, because he did not file his lawsuit within 180 days after the alleged unlawful discrimination practice occurred, as required by Ohio Rev.Code § 4112.02(N).[3] In his Memorandum In Opposition to Defendant's Motion (Doc. # 17), Plaintiff responds that, upon further research, he agrees to the dismissal of his state law age discrimination claim. Accordingly, without further discussion, the Court SUSTAINS Defendant's Motion to Dismiss Plaintiff's state law age discrimination claim (Count Two).

#### B. *Federal Claim of Age Discrimination (Count One)*

HBOC seeks dismissal of Parrish's ADEA claim on the ground that the claim was not timely filed. Specifically, Defendant contends that, although Plaintiff's original lawsuit was filed within the 90–day statutory filing period, the instant litigation is time-barred, because it was filed after that filing period had expired. Defendant further argues that the Ohio savings statute does not operate to toll the statutory limitations period, because Congress provided for a *federal* statute of limitations for this federal claim. Plaintiff responds that his ADEA claim is timely due to the tolling provisions set forth in 28 U.S.C. § 1367(d). Furthermore, he argues that the Ohio saving statute, Ohio Rev.Code § 2305.19, is applicable, because it has been incorporated into section

**3.** HBOC notes that Ohio Rev.Code § 4112.02(N) has been revised, now providing for a two-year statute of limitations. It states, however, that the amendment was not effective until January 27, 1997. Thus, Defendant asserts that Plaintiff's original action, Case No. C–3–97–35, which was filed on January 23, 1997, was governed by the 180–day limitations period and was, therefore, untimely filed.

1367(d). As discussed below, the Court concludes that § 1367(d) does not apply to the present circumstances. Defendant's Motion to Dismiss Count One is, accordingly, SUSTAINED.

■ Under the ADEA, a complainant has ninety days from the date of the receipt of a notice of the right to sue to initiate a civil action against the respondent. 29 U.S.C. § 626(e).[4] The EEOC issued a Notice of Right to Sue Letter to Parrish on October 31, 1996. Plaintiff initially filed suit against HBOC on January 23, 1997, within the ninety-day filing limitations period. The instant litigation was filed on August 31, 1998, well beyond the expiration of the statutory filing period. "If a plaintiff in possession of a right-to-sue letter files suit within [the statutory filing] period, but later dismisses the lawsuit without prejudice, courts will regard that plaintiff as never having filed that suit and will not toll the statutory filing period." *Clark v. Nissan Motor Mfg. Corp. U.S.A.*, 1998 WL 786892 at *3 (6th Cir. Oct. 26, 1998) (Title VII), citing *Wilson v. Grumman Ohio Corp.*, 815 F.2d 26, 27 (6th Cir.1987). Accordingly, Plaintiff's pending ADEA claim is untimely filed, unless a statute operates to toll the filing period. *Wilson*, 815 F.2d at 27 ("It is generally accepted that a dismissal without prejudice leaves the situation the same as if the suit had never been brought, and that[,] *in the absence of a statute to the contrary* [,] a party cannot deduct from the period of the statute of limitations the time during which the action so dismissed was pending.") (emphasis added).

■ Plaintiff argues that Congress, by the enactment of 28 U.S.C. § 1367, has provided such a means to toll the ADEA statutory filing limitations period. That statute provides, in pertinent part:

> (d) The period of limitations for any claim asserted under subsection (a),[5] and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

28 U.S.C. § 1367(d). Plaintiff argues that § 1367(d) operates to toll the filing deadlines under the ADEA, because he voluntarily dismissed, on July 30, 1998, a supplemental claim, brought pursuant to § 1367(a), and his ADEA claim was voluntarily dismissed at the same time as that supplemental claim. As discussed below, the Court disagrees that § 1367(d) operates when the supplemental claim is refiled in federal court, as opposed to state court, and when it is voluntarily dismissed, pursuant to Fed.R.Civ.P. 41(a), as opposed to having been dismissed by the court, pursuant to § 1367(c).

■ Numerous authorities have recognized that the purpose of § 1367(d) was to ensure that plaintiffs did not lose their right to pursue their state law claims in *state court* in the event that the federal

---

4. 29 U.S.C. § 626(e) provides, in pertinent part:

   Section 259 of this title shall apply to actions under this chapter. If a charge filed with the Commission under this chapter is dismissed or the proceedings of the Commission are otherwise terminated by the Commission, the Commission shall notify the person aggrieved. A civil action may be brought under this section by a person defined in section 630(a) of this title against the respondent named in the charge within 90 days after the date of the receipt of such notice.

5. 28 U.S.C. § 1367(a) provides:

   (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

court failed to exercise supplemental jurisdiction over those claims. As stated in Moore's Federal Practice:

> Subsection (d) of the supplemental jurisdiction statute enacts a salutary tolling provision to save supplemental claims that have been dismissed in federal court for assertion in state court ... The legislative history indicates that the provision's purpose is to prevent the loss of claims to statute of limitations if state law might fail to toll the running of the limitation period while a supplemental claim is pending in federal court. It also eliminates a possible disincentive from such a gap in tolling if a plaintiff might wish to seek voluntary dismissal of other claims in order to pursue the entire matter in state court, after a federal court dismisses a supplemental claim.

16 James Wm. Moore et al., Moore's Federal Practice § 106.05[5] (3d ed.1999) (citing H.R.Rep. No. 734, 101st Cong., 2d Sess. (1990), *reprinted in* 1990 U.S.C.C.A.N. 6860, 6876); *see also* David D. Siegel, The Adoption of § 1367, Codifying "Supplemental Jurisdiction" (Practice Commentary to 28 U.S.C. § 1367) ("Subdivision (d) of § 1367 recognizes the serious statute of limitations problems a claim may face after it has been 'declined' in a federal action. It may now be too late under the state statute of limitations to bring a state action on the claim. Subdivision (d) answers this dilemma by assuring that the claim shall have at least a 30–day period for the state action after it is dismissed by the federal court."). The Court finds no evidence that § 1367 was intended to act as a savings statute, allowing a plaintiff to refile in *federal court.* Thus, the Court concludes that § 1367(d) operates to guarantee that plaintiffs do not lose the ability to refile their claims in *state court,* in the event that state law does not provide for the tolling of the statute of limitations during the pendency of the federal action, following the federal court's failure to exercise supplemental jurisdiction. Section

1367(d) is, therefore, inapplicable in the present circumstances.

Plaintiff argues that § 1367(d) provides that the statute of limitations is tolled following "dismissal" of the supplemental claim, and that "dismissal" is not limited to circumstances where the district court declines to exercise supplemental jurisdiction, pursuant to § 1367(c). In support of his argument, Plaintiff cites *Naragon v. Dayton Power & Light Co.,* 934 F.Supp. 899 (S.D.Ohio 1996) (Merz, Mag. J.), in which the court stated that § 1367(d) would toll the statute of limitations on claims dismissed pursuant to Fed.R.Civ.P. 41(a). In that case, the plaintiff sought remand of her state law claims after the court had dismissed her federal claim. In denying the motion, the court stated that "denial of remand does not deprive Plaintiff of the benefit of the Ohio savings statute, Ohio Revised Code § 2305.19. If Plaintiff moved for dismissal under Fed. R.Civ.P. 41(a)(2) and the dismissal were granted, Plaintiff would still have the benefit of § 2305.19 by virtue of 28 U.S.C. § 1367(d)." *Id.* at 902.

■ This Court disagrees with the *Naragon* court's interpretation of the statute. The legislative history of 28 U.S.C. § 1367 indicates that § 1367(d) "provides a tolling of statutes of limitations for any *supplemental claim* that is dismissed *under this section* and for any other claims in the same action voluntarily dismissed at the same time or after the supplemental claim is dismissed." H.R.Rep. No. 734, 101st Cong., 2d Sess. (1990), *reprinted in* 1990 U.S.C.C.A.N. 6860, 6876 (emphasis added). Thus, the legislative history indicates that Congress did not intend the phrase "the dismissal" to include dismissal of the supplemental state claim by *any* procedure but, rather, dismissal pursuant to § 1367(c), which provides four circumstances under which the district court may decline to exercise supplemental jurisdiction over a claim brought pursuant to § 1367(a), and thereby dismiss a supple-

mental state law claim.[6] *See* David D. Siegel, The Adoption of § 1367, Codifying "Supplemental Jurisdiction" (Practice Commentary to 28 U.S.C. § 1367) (stating that § 1367(d) "recognizes that when a discretionary dismissal of the dependent claim is made *under § 1367(c)* while the main claim is retained, the plaintiff may confront duplicative litigation in two different courts.") (emphasis added). Therefore, although § 1367(d) literally states that the statute of limitations is tolled for claims that are voluntarily dismissed at the same time or after "the dismissal" of the supplemental claim, this Court does not interpret the phrase "the dismissal" to include voluntary dismissal, pursuant to Fed. R.Civ.P. 41(a). Rather, the Court concludes that, for § 1367(d) to be applicable, the supplemental claim brought pursuant to § 1367(a) must have been dismissed by the court pursuant to § 1367(c). Herein, Plaintiff's state law claims were voluntarily dismissed in July, 1998, pursuant to Fed. R.Civ.P. 41(a)(1), and not pursuant to 28 U.S.C. § 1367(c). Accordingly, Plaintiff cannot avail himself of 1367(d).

■ The Court further notes that to interpret § 1367(d) as Plaintiff suggests would substantially alter well-established jurisprudence that state saving statutes cannot "save" federal claims which have their own statute of limitations, a result which Congress could not have intended, in light of the statute's legislative history. *See* H.R.Rep. No. 734, 101st Cong., 2d Sess. (1990), *reprinted in* 1990

U.S.C.C.A.N. 6860, 6874 ("This section [1367] would authorize [supplemental] jurisdiction in a case like *Finley [v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989) ],[7] as well as essentially restore the pre-*Finley* understanding of the authorization for and limits on other forms of supplemental jurisdiction.") It is well-established that a state saving statute cannot "save" a federal claim that is governed by its own statute of limitations. In *Burnett v. New York Central R.R. Co.,* 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965), the United States Supreme Court expressly rejected the use of Ohio Rev. Code § 2305.19 to "save" an untimely claim under the Federal Employers' Liability Act, which, like the ADEA, contains its own statute of limitations. In so doing, the Court nevertheless noted that "had petitioner's action been one arising under Ohio law, he would have had an additional year in which to file his action in a proper court." *Id.* at 432, 85 S.Ct. 1050. Likewise, the Sixth Circuit has repeatedly refused to apply a state saving statute to revive an untimely federal claim, when the federal statute under which the plaintiff has sued contains its own limitations period. *Johnson v. Railway Express Agency, Inc.,* 489 F.2d 525, 530 (6th Cir.1973); *Ester v. Amoco Oil Co.,* 65 F.3d 168, 1995 WL 518867 (6th Cir.1995); *Clark,* 1998 WL 786892 at *3 ("Further, state tolling and saving provisions do not apply to limitations periods set forth by Congress."); *see also Beck v. Caterpillar, Inc.,* 50 F.3d 405, 406–7 (7th Cir.1995) ("As [the plain-

6. Those four circumstances include: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; and (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

7. In *Finley,* the plaintiff's decedents were killed when their plane struck electric power lines on an approach to a city-run airfield in San Diego. The plaintiff sued the United States under the Federal Tort Claims Act for

negligence. She subsequently moved to amend her complaint to add state law tort claims against the city and the utility company that maintained the power lines. The trial court allowed the plaintiff to amend her complaint, under the doctrine of pendent-party jurisdiction. The Ninth Circuit reversed, and the Supreme Court affirmed the reversal, stating that the Federal Tort Claims Act did not permit the exercise of pendent-party jurisdiction over additional parties as to which no basis for federal jurisdiction existed. The decision raised doubts as to the scope of pendent and ancillary jurisdiction.

tiff] correctly notes, the federal courts have expressed a general willingness to borrow states' tolling and savings provisions in the past, but only when the federal cause of action asserted is governed by a state statute of limitations.... The same cannot be said when the federal claim in question is governed by a federal statute of limitations...."). Plaintiff's interpretation of § 1367(d) would allow a state saving statute to "save" an ADEA claim, which is governed by federal statutory filing limitations, solely because of the dismissal of a supplemental state law claim.

The Court also notes that incorporation of a state saving statute into a federal statute of limitations "would produce nonuniform periods of limitation in the several States. The scope of such statutes and the length of additional time they allow vary considerably from State to State. Moreover, not all States have saving statutes." *Burnett*, 380 U.S. at 433, 85 S.Ct. 1050. Consequently, the Court's application of Ohio's saving statute, or any other saving statute, would destroy the ADEA's uniform operation throughout the United States and lead to inconsistent and unjust results.

Moreover, as noted by Defendant, to apply § 1367(d) to the present circumstances would place a plaintiff who raised state and federal claims in a substantially better position than a plaintiff who raised only federal claims, when the federal claims were subject to strict filing requirements. Using the present case as an example and interpreting § 1367(d) as Plaintiff suggests, if Plaintiff were to dismiss his supplemental state claims voluntarily and concurrently dismiss his federal claim voluntarily after the statutory filing deadline, he could use § 1367(d) to toll the statute of limitations on both the state and federal claims and refile them. However, if Plaintiff only brought his federal age discrimination claim, § 1367 would not apply (there being no supplemental state law claim) and Plaintiff's dismissal of his federal claim, at such juncture, would preclude

him from refiling. Thus, a plaintiff with federal and supplemental state claims would be in a better position than a plaintiff with only a federal claim. The Court concludes that Congress did not intend for § 1367 to provide a plaintiff with supplemental claims an advantage over a plaintiff without such claims.

The Court, therefore, rejects Plaintiff's interpretation of § 1367(d) and concludes that § 1367(d) does not operate to incorporate Ohio's saving statute under the present circumstances. Plaintiff's claim under the ADEA (Count One) is not "saved" by the application of 28 U.S.C. § 1367(d) or Ohio Rev.Code § 2305.19. Accordingly, Defendant's Motion to Dismiss Count One of Plaintiff's Complaint (Age Discrimination in Violation of the ADEA) is SUSTAINED.

Because the Court has dismissed Plaintiff's ADEA claim, the claim upon which this Court's subject matter jurisdiction is based, the Court now addresses whether it should retain Plaintiff's remaining state law claims. The predecessor to supplemental jurisdiction, pendent jurisdiction, had its genesis in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In *Gibbs*, the Supreme Court concluded that, when the state and federal claims arise from the same nucleus of operative facts, the district court could exercise pendent jurisdiction over state law claims. *Id.* at 725, 86 S.Ct. 1130. However, the *Gibbs* court cautioned:

That power [the power to exercise pendent jurisdiction] need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them.... Needless decisions of state

law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

*Id.* at 726, 86 S.Ct. 1130 (citation and footnotes omitted). In *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), the Supreme Court explained the doctrine of pendent jurisdiction:

Under *Gibbs,* a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction.... As articulated by *Gibbs,* the doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values.

\*     \*     \*     \*     \*     \*

*Gibbs* establishes that the pendent jurisdiction doctrine is designed to enable courts to handle cases involving state-law claims in the way that will best accommodate the values of economy, convenience, fairness, and comity, and

Gibbs further establishes that the Judicial Branch is to shape and apply the doctrine in that light.

*Id.* at 350–51, 108 S.Ct. 614 (citations and footnote omitted).

When Congress enacted supplemental jurisdiction, it codified and expanded the doctrine of pendent jurisdiction. *Executive Software v. U.S. District Court,* 24 F.3d 1545 (9th Cir.1994). For instance, as mentioned, *supra,* § 1367(c) provides that a district court may decline to exercise supplemental jurisdiction over a state law claim when the federal claim has been dismissed. Herein, this Court has dismissed the Plaintiff's federal law claim at an early stage in the litigation. Therefore, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims of breach of commission agreement and breach of contract/promissory estoppel. 28 U.S.C. § 1367(c). These claims are, accordingly, dismissed without prejudice. Plaintiff may pursue his state law claims in state court, pursuant to 28 U.S.C. § 1367(d).

For the foregoing reasons, Defendant's Motion to Dismiss Counts One and Two of Plaintiff's Complaint (Doc. # 3) is SUSTAINED. Plaintiff's remaining state law claims are dismissed, without prejudice, pursuant to 28 U.S.C. § 1367(c).

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.