**M & M MEDICAL SUPPLIES AND
SERVICE, INC., Plaintiff,**

v.

**PLEASANT VALLEY HOSPITAL, INC.,
et al., Defendants.**

**Civ. A. No. A:88–1099.**

United States District Court,
S.D. West Virginia,
Parkersburg Division.

June 6, 1990.

**1018**

James A. Burt and James A. Gustino, Burt & Gustino, Orlando, Fla., and Richard A. Bush, Bush & Trippel, Parkersburg, W. Va., for plaintiff.

John E. Jenkins, Jr. and Beverly A. Uhl, Jenkins, Fensetermaker, Frieger, Kayes & Farrell, Huntington, W. Va., and Carroll W. Casto, Casto & Casto, Point Pleasant, W.Va., for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending before the Court is the Defendants' motion for summary judgment. The issues raised therein have been fully briefed.

The Plaintiff M & M Medical Supplies and Service, Inc. (M & M) is in the business of selling and renting durable medical equipment (DME). The Defendant Pleasant Valley Hospital, Inc. (the Hospital) operates an acute care hospital facility. The Defendant Pleasant Valley Home Medical Equipment, Inc. (the Equipment Company) is also in the DME business. All parties' businesses are located in Point Pleasant, Mason County, West Virginia.

The Equipment Company came into existence in 1985 when the Hospital decided to expand into the DME business.

The Defendants acknowledge that the reason for this expansion was to aid in offsetting reductions in Medicare and Medicaid reimbursements. Since the Equipment Company's entry, M & M's business has declined and it has suffered a decrease in revenues. M & M claims that it has been injured as a result of the Defendants' actions. In particular, the Plaintiff complains that the Defendants have violated federal anti-trust statutes by directing hospital patients exclusively to the Equipment Company for their DME needs upon discharge and that such conduct has resulted in the complete elimination of competition in the Point Pleasant DME market.

By their motion for summary judgment the Defendants contend that no genuine issues of material fact exist in this case and that, therefore, they are entitled to judgment as a matter of law. In order to withstand a motion for summary judgment, a nonmoving party must "make a showing sufficient to establish the existence of an element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In other words, the Plaintiff must present evidence sufficient to raise a question of fact as to every element of each of its causes of action if it is to overcome the Defendants' motion for summary judgment as to that particular claim.

The Plaintiff has asserted six separate anti-trust claims—restraint of trade, monopolization, attempted monopolization, levering of monopoly power, conspiracy to monopolize, and exclusive dealing—as well as a pendent claim of tortious interference with business relationships.

## I. Sherman Act, Section 1

■ The Plaintiff has alleged that the Defendants' conduct has resulted in an unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, which provides in pertinent part as follows:

"Every contract, combination in the form of trusts or otherwise, or conspiracy, in restraint of trade or commerce among the several States ... is declared to be illegal...." [1]

Section 1 reaches only concerted action and does not prohibit unilateral conduct.

The essence of a Section 1 claim is an agreement between separate entities to engage in activity in restraint of trade. In *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984), the Court recognized that an "agreement" between a parent and its wholly-owned subsidiary represents merely unilateral conduct. The Court held, therefore, that a corporation and its wholly owned subsidiary "are incapable of conspiring with each other for purposes of § 1 of the Sherman Act." *Id.* at 777, 104 S.Ct. at 2745.

■ In this case the Defendants have presented evidence to support their contention that the equipment company is a wholly owned subsidiary of the Hospital. Krimm deposition at 72–73. The Plaintiff has presented no evidence to create a factual issue in this regard. Considering the undisputed nature of the relationship between the Defendants, therefore, the Court concludes as a matter of law that the Defendants are incapable of engaging in concerted action between themselves so as to violate Section 1 of the Sherman Act.

## II. Sherman Act, Section 2

The Plaintiff has also alleged that the Defendants violated Section 2 of the Sherman Act, 15 U.S.C. § 2, which provides in pertinent part as follows:

"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States ... shall be deemed guilty of [an offense against the United States]."

The Plaintiff has asserted several causes of action pursuant to Section 2.

**1.** A private right of action is provided for violation of this and other federal anti-trust statutes.

15 U.S.C. § 15.

A. Monopolization.

■ First, M & M has claimed that the Defendants' conduct has resulted in monopolization of the DME market. In order to succeed on such a claim, the Plaintiff must establish that a defendant has monopoly power in the relevant product and geographic markets, and that such power was willfully acquired or maintained. *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966).

Proof of each of these elements is essential to a Section 1 recovery.

"[A] party has monopoly power if it has, over 'any part of the trade or commerce among the several States,' a power of controlling prices or unreasonably restricting competition." *United States v. E.I. Du Pont de Nemours & Co.*, 351 U.S. 377, 389, 76 S.Ct. 994, 1004, 100 L.Ed. 1264 (1956), *citing Standard Oil Co. v. United States*, 221 U.S. 1, 58, 31 S.Ct. 502, 515, 55 L.Ed. 619 (1911). Whether a party has monopoly power is determined by reference to the relevant product and geographic markets.

In opposition to the Defendants' motion, the Plaintiff has submitted the affidavit of Roger D. Blair, who for the purposes of this motion the Court will treat as an expert in the field of economics. Dr. Blair has stated in his affidavit that there are two relevant product markets in this case: the market for hospital services and the market for durable medical equipment. He has stated that the relevant geographic market is Mason County, West Virginia. He has set forth no facts to support these opinions, nor has he provided facts to support the Plaintiff's contention that the Defendant Equipment Company has monopoly power in the DME market. Dr. Blair has stated only that the Equipment Company "has held its prices above those charged by M & M Supplies and Services on numerous articles of DME for over a year without losing significant numbers of customer [sic]." Dr. Blair has cited no specific examples of such conduct. The Plaintiff likewise has presented no evidence beyond its conclusory allegations that the Equipment Company has erected barriers to entry into the DME market in Mason County, West Virginia.

■ In order to raise a question of fact, an expert's affidavit "must set forth specific facts showing that there is a genuine issue for trial." *Rule* 56(e), Federal Rules of Civil Procedure. The Court is aware, of course, that expert testimony is subject to special rules. For example, *Rule* 703, Federal Rules of Evidence, provides that an expert may base his or her opinion on inadmissible facts if they are of a type reasonably relied upon by experts in that field. *Rule* 705 allows an expert to give opinion testimony without prior disclosure of underlying facts. The specific facts requirement of *Rule* 56(e), however, is not altered by these evidentiary rules. *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir.1985).

■ Considering M & M's failure to establish an issue of fact regarding the Equipment Company's monopoly power within the relevant markets, the Court need not consider the remaining element of its monopolization claim—willful acquisition or maintenance of such power. The Plaintiff cannot prevail on its Section 2 monopolization claim.

B. Attempted monopolization/leveraging.

■ To establish attempted monopolization, the Plaintiff must prove that the Equipment Company had the specific intent to monopolize the DME market within the relevant geographic market, that it engaged in predatory or anti-competitive conduct for that purpose, and that there was a dangerous probability that it might succeed in monopolizing the DME market. *Swift and Co. v. United States*, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518 (1905). To satisfy these elements, the Plaintiff argues briefly that

"The Hospital specifically intended to dominate the durable medical equipment market and extract the profits therefrom to offset losses associated with cutbacks in federal Medicare programs. This evinces a specific intent to monopolize

the durable medical equipment market in Mason County, West Virginia. The fact that all durable medical equipment patient referrals from Pleasant Valley Hospital now are placed with the Hospital-owned company demonstrates a dangerous probability of monopolization of the durable medical equipment market."

Plaintiff's memorandum at 9.

■ While there is evidence of record that the Hospital wished to offset Medicare losses, this evidence alone will not support an inference of specific intent to monopolize the DME market. Nor is the Plaintiff's allegation that the Hospital referred all DME patients to the Equipment Company sufficient to raise an inference of specific intent to monopolize on the part of the Equipment Company. Even assuming that to be a true statement, the evidence of record does not indicate that the patients were coerced or forced in any way to satisfy their DME needs through the Equipment Company to the exclusion of all of its competitors.

■ The Plaintiff has also alleged that the Defendant Hospital improperly used monopoly power in the health care market to gain advantage in the DME market. Although M & M refers to this claim as leveraging, Section 2 of the Sherman Act clearly does not provide a cause of action for conduct so denominated. The Plaintiff's allegations of leveraging merely state a claim for attempted monopolization.

"Use of monopoly power 'to destroy threatened competition' is a violation of the 'attempt to monopolize' clause of § 2 of the Sherman Act." *Otter Tail Power Co. v. United States*, 410 U.S. 366, 377, 93 S.Ct. 1022, 1029, 35 L.Ed.2d 359 (1973), *quoting Lorain Journal Co. v. United States*, 342 U.S. 143, 154, 72 S.Ct. 181, 187, 96 L.Ed. 162 (1951). In *Otter Tail*, the defendant with undisputed monopoly power in the electric power transmission market used that dominant position to foreclose competition in the retail electric power market.

■ Because the use of monopoly power in one market with intent to harm competition in another market is prohibited as an attempt to monopolize under Section 2 of the Sherman Act, traditional attempt elements must be established to prove the Plaintiff's claim of leveraging. As noted earlier, there is insufficient evidence of specific intent to monopolize on the part of either Defendant in this case.

Likewise, assuming the Hospital has monopoly power in the health care market in Mason County, there is no other evidence to support the dangerous probability of success element. The Plaintiff must present evidence indicating that the Hospital's monopoly power enabled it to coerce DME customers to use the Equipment Company rather than other suppliers of DME.

In this regard, the Plaintiff has presented the affidavits of several DME customers who have stated generally that they were not advised of other suppliers nor told that they had a choice as to where to obtain DME. The affidavits of Reed Sturgeon, Karen Broadwater, Jean Taylor and Karen Sue Krebs state that Hospital personnel ordered DME for patients from the Equipment Company without consulting the patients as to which DME supplier they preferred.

Another affiant, Maxine Hatfield, indicated that the Hospital used its records to learn that her husband used oxygen. The Equipment Company then sent a letter to Mr. Hatfield asking him to switch to the Equipment Company for his oxygen needs. Subsequently, a Hospital home health nurse visited the Hatfields and told Mrs. Hatfield "that since [she] was an employee of the Hospital, [she] should support the Hospital's medical equipment company." Mrs. Hatfield opined, therefore, that her employment with the Hospital was used unfairly in an effort to cause her husband to do business with the Equipment Company.

In none of these affidavits or other material submitted by M & M is there any evidence of coercion by the Hospital. There is nothing to suggest that the patients were threatened or would have been subject to adverse action if they had chosen another DME supplier. Also, it appears

that most of these patients had done business in the past with M & M and, therefore, knew that there were sources of DME other than the Equipment Company. There is no evidence that patients were advised that they could not go elsewhere for DME.

Having failed to establish specific intent to monopolize the DME market or any predatory conduct by either of the Defendants, the Plaintiff has failed to raise a question of fact as to its attempt to monopolize, or leveraging, claim.

### C. Conspiracy to monopolize.

The Plaintiff has alleged not only a conspiracy in restraint of trade, but also a conspiracy to monopolize by the Defendants. For the reasons the Plaintiff cannot, as a matter of law, prevail on its Section 1 claim, its conspiracy to monopolize claim must also fail.

### III. Clayton Act

M & M has also asserted a claim of exclusive dealing in violation of Section 3 of the Clayton Act, which provides in pertinent part as follows:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods ... for use, consumption or resale within the United States ... on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods ... of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

The Plaintiff alleges that there was such an agreement between the Defendants.

The Defendants contend that the Plaintiff can prove no such agreement in this case because it has not alleged that the patients or individual users were party to the arrangement, but rather has alleged that an agreement existed between the Hospital and the Equipment Company.

Initially, it appears to the Court that M & M's exclusive dealing claim is functionally indistinguishable from its Sherman Act Section 1 claim and that the considerations leading to the demise of the Section 1 claim likewise should dictate dismissal of the exclusive dealing claim.

The Plaintiff argues, however, that the Hospital, through its personnel, stands in the shoes of its patients as the "true economic decision-maker" in selecting DME suppliers. Such a theory has been recognized in Sherman Act Section 1 cases. *See, e.g., Dos Santos v. Columbus–Cuneo–Cabrini Medical Center*, 684 F.2d 1346, 1354 (7th Cir.1982). Neither this nor the other cases cited by the Plaintiff, however, involve arrangements between related corporate entities.

▮▮▮▮▮▮ In a case such as this, involving a corporation and its wholly owned subsidiary, the true economic decision maker argument will not work. If an agreement between the Equipment Company and the Hospital, on behalf of its patients, that DME be obtained only from the Equipment Company could form the basis of an antitrust violation, then the Hospital would also be in violation of federal anti-trust laws each time it provided medicines, bandages, or other medical supplies from its own stock rather than allowing the patient to shop around for his or her own materials.[2] Section 3 of the Clayton Act condemns only joint activity. M & M's argument that the Hospital was the true eco-

2. These examples, of course, are analogous only to the extent that the product market in this case includes DME used within the Hospital itself. The Court notes that M & M has submitted the affidavit of Dr. Osborne who indicated that while she enjoyed privileges at Pleasant Valley Hospital, after the Equipment Company entered the DME market, she was not permitted to obtain infant monitors from any other source.

The Court notes, too, that as to the market for DME outside the Hospital, M & M has presented some evidence through affidavits that in some instances a DME supplier was selected for patients by Hospital personnel without consultation with the patients. Even assuming that Hospital personnel so acted, without more, this evidence hardly supports the requirement of a condition, agreement or understanding not to deal with the Equipment Company's competitors.

nomic decision maker in relation to its Section 3 claims, must fail inasmuch as the conduct complained of is nothing more than unilateral conduct by the Hospital and its wholly owned subsidiary. *See generally Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. at 771–74, 104 S.Ct. at 2741–43.

For the foregoing reasons, the Court concludes that the Defendants, as between themselves, cannot violate Section 3 of the Clayton Act.

Based on the foregoing, the Court finds that there are no genuine issues of material fact as to the Plaintiff's anti-trust claims and grants summary judgment in favor of the Defendants on those claims. Inasmuch as those federal claims formed the only basis of the Court's jurisdiction herein, the Court dismisses the pendent tortious interference claim without prejudice.