946 F.2d 886
 1991-2 Trade Cases P 69,618
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
M & M MEDICAL SUPPLIES AND SERVICE, INCORPORATED, Plaintiff-Appellant,
v.
PLEASANT VALLEY HOSPITAL, INCORPORATED; Pleasant Valley
Home Medical Equipment, Incorporated, Defendants-Appellees.
 No. 90-3100.
 United States Court of Appeals, Fourth Circuit.
 Argued March 5, 1991.
Decided Oct. 22, 1991.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Parkersburg. Charles H. Haden, II, Chief District Judge. (CA-88-1099-A)
 Argued: James Allen Burt, Burt and Associates, Orlando, Fla., for appellant; John Earl Jenkins, Jr., Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, W.Va., for appellees.
 On Brief: Richard A. Bush, Bush & Trippel, Parkersburg, W.Va., for appellant; Steven R. Bartram, Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, W.Va., Carroll W. Casto, Casto & Casto, L.C., Point Pleasant, W.Va., William G. Kopit, Epstein, Becker & Green, P.C., Washington, D.C., for appellees.
 S.D.W.Va., 738 F.Supp. 1017.
 AFFIRMED IN PART, REVERSED IN PART, VACATED AND REMANDED.
 
 
 1
 Before K.K. HALL, Circuit Judge, BUTZNER, Senior Circuit Judge, and TERRENCE WILLIAM BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 
 OPINION
 TERRENCE WILLIAM BOYLE, District Judge:
 
 2
 This is a suit between competitors engaged in the sale of durable medical equipment[1] (DME) in Mason County, West Virginia. The plaintiff seeks damages from the defendants for monopolization, and for an attempt to monopolize, under Section 2 of the Sherman Antitrust Act. The district court entered summary judgment for the defendants and plaintiff appeals. Because we find summary judgment to be inappropriate, we vacate and remand.
 
 I.
 
 3
 M & M Medical Supplies, the plaintiff, is a dealer in durable medical equipment in Point Pleasant, Mason County, West Virginia. Pleasant Valley Hospital, and its wholly owned subsidiary, Pleasant Valley Home Medical Equipment, the defendants, are engaged in hospital services and the provision of durable medical equipment, respectively, in Point Pleasant.
 
 
 4
 Pleasant Valley Home Medical Equipment Company opened in 1985. Since then the Hospital has used the Equipment Company as a source for DME for its outgoing patients. The Hospital places patient orders, with the Equipment Company, without the patient being allowed the opportunity to choose among competitors. The Hospital also endeavors to sell Equipment Company products to its employees and encourages them to support the Equipment Company in their private needs for DME.
 
 
 5
 M & M brought suit against the Hospital and the Equipment Company alleging that the Hospital's practice of ordering DME exclusively from the Equipment Company violates Section 2 of the Sherman Act.[2] Plaintiff alleges that it has a claim for monopolization and a claim for attempted monopolization. Plaintiff also alleges that the facts support a claim under the monopolization theory of "monopoly leveraging." Other antitrust violations are alleged but have not been pursued on appeal.
 
 
 6
 After discovery, the defendants moved for summary judgment. The district court granted this motion based on its determination that the plaintiff had failed to show either that the defendants had "monopoly power" in the marketplace or that the defendants had attempted to monopolize the DME market. The district court also ruled that the theory of "monopoly leveraging" is not a distinct claim under the Sherman Act, but rather is a redundant allegation of the claim for attempted monopolization.
 
 II.
 
 7
 We must decide whether M & M has made out a prima facie case of monopolization sufficient to withstand summary judgment. In order for M & M to do this, it must produce evidence sufficient to support each of the elements of its claims. If it has done so, and therefore raised contested issues of fact on these elements, summary judgment is inappropriate.
 
 
 8
 The first element of a claim of monopolization under Section 2 of the Sherman Act is the defendant's exercise of "market power." To prove the exercise of market power against a defendant, a plaintiff must show that the defendant has monopoly power over a product in some relevant geographic market. See United States v. Grinnell Corp., 384 U.S. 563, 570-71 (1966); Catlin v. Washington Energy Co., 791 F.2d 1343, 1347 (9th Cir.1986).
 
 
 9
 The exercise of market power is composed of two independent prongs: (1) the existence of some specific, defined geographic market for the product, and (2) the exercise of monopoly power by the defendants over the product in this relevant market. Satellite Television & Associated Resources, Inc., v. Continental Cablevision of Virginia Inc., 714 F.2d 351 (4th Cir.1983), cert. denied, 465 U.S. 1027 (1984). Failure to prove either prong will result in the dismissal of plaintiff's entire claim. Consul, Ltd. v. Transco Energy Co., 805 F.2d 490, 495-96 (4th Cir.1986), cert. denied, 481 U.S. 1050 (1987); Satellite Television, 714 F.2d at 357.
 
 
 10
 The parties dispute the size of the relevant market. The plaintiff claims the market is Mason County, West Virginia. The defendants claim that a larger area straddling the Ohio River Valley defines the relevant market--including Galia and Meigs Counties, Ohio, and Mason County, West Virginia.
 
 
 11
 The parties also dispute whether the defendants have exercised monopoly power. In order to prove that a party has monopoly power, there must be proof that the party has the power to control prices or unreasonably restrict competition in a relevant market. United States v. E.I. DuPont de Nemours & Co., 351 U.S. 377, 389 (1956) (citing Standard Oil Company v. United States, 221 U.S. 1, 58 (1911)). Monopoly power is a necessary component of any illegal monopolization, as it would be impossible for a party to monopolize a market unless that party had the power to do so.
 
 
 12
 M & M has submitted the affidavit of its expert-economist, Roger Blair, as proof of both the relevant market and the exercise of monopoly power. Dr. Blair's affidavit states that his opinions are based on a review of the patient origin data provided by the Hospital and the Equipment Company.
 
 
 13
 Dr. Blair asserts that the relevant market in this case is Mason County:
 
 
 14
 [T]he patient origin data strongly suggest that Mason County residents rely predominantly upon Mason County suppliers for their hospital and medical equipment needs. Some overlap into the neighboring Ohio counties is to be expected but does not change the unmistakable conclusion that Mason County represents a distinct geographic market for antitrust analysis.
 
 
 15
 Dr. Blair also states that the Equipment Company has exercised monopoly power in the market. He says:
 
 
 16
 Pleasant Valley Home Medical Equipment is exercising monopoly power--i.e., the power to raise price or exclude competition. Pleasant Valley Home Medical Equipment has held its prices above those charged by M & M Supplies and Services on numerous articles of DME for over a year without losing significant numbers of customer [sic]. This is a direct measure of monopoly power.
 
 
 17
 We must decide whether the testimony of an expert is sufficient to support a prima facie showing of monopoly power and relevant market. Such a showing would create a contested material issue of fact on these elements.
 
 
 18
 The defendants have offered counter-affidavits challenging the conclusions of the plaintiff's expert. The defendants argue that the opinion evidence by plaintiff's expert must be supported by a factual predicate and that, without a factual basis to support this expert's opinion, it is insufficient to prove the elements in issue. Plaintiff points out that the plaintiff's ability to develop facts dealing with consumer patterns, market share, and the relationship between patient care at the Hospital and DME purchases from the Equipment Company have all been inhibited by the defendants' procurement of a protective order from the court limiting the plaintiff's access to patients.
 
 
 19
 A party resisting summary judgment must set forth specific facts in order to raise a material issue as to each element of that party's claim. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). We believe that the plaintiff has satisfied this burden by the statements of its experteconomist, by the inferences permissibly drawn in plaintiff's favor from evidence not in dispute, and by the circumstances of discovery in this case which limited plaintiff's access to relevant patient data.
 
 
 20
 The expert's opinion does not stand alone. It must be considered with evidence that the defendant Hospital is the sole hospital in Mason County and that the majority of all DME consumers in the county have their initial need for such equipment as a result of either inpatient or outpatient hospital care. The Hospital's evidence shows that the majority of all Mason County residents use the defendant Hospital for their hospital-based needs. Evidence that Hospital employees were encouraged to purchase Equipment Company products is consistent with the conclusions drawn by plaintiff's economist.
 
 
 21
 Under these circumstances, the evidence supports plaintiff's claim that Mason County is the relevant market, and that the defendants exercised "monopoly power." This combination of expert opinion and factual support found in the record distinguishes this case from those in which a party has no more, in opposition to summary judgment, than the unsupported opinion of an expert. See Mid-State Fertilizer v. Exchange National Bank, 877 F.2d 1333, 1339 (7th Cir.1989). Because the trial court did not analyze the remaining element of monopolization[3]--whether the defendants acted willfully in acquiring or maintaining their market power--we remand this claim for further consideration.
 
 III.
 
 22
 Plaintiff also challenges the district court's allocation of the plaintiff's burden of production with respect to the motion for summary judgment. Plaintiff argues that as the non-movant it was erroneously charged with a duty of producing evidence in order to overcome the motion. Since we find that summary judgment was inappropriate, it is unnecessary for us to address the burden of production arguments beyond stating that the district court properly followed the sequence of proof required in resistance to a motion of summary judgment under Rule 56(e) as set out by the Supreme Court in Celotex. The district court required plaintiff to produce evidence of each element of every claim sufficient to establish a prima facie case and to demonstrate that there are contested material facts as to these elements.
 
 IV.
 
 23
 M & M also appeals the dismissal of its Section 2 Sherman Act claim for attempted monopolization. To prove attempted monopolization, the plaintiff must show (1) a specific intent to monopolize a relevant market, (2) predatory or anticompetitive acts, and (3) a dangerous probability of successful monopolization. Advanced Health-Care Services, Inc. v. Radford Community Hospital, 910 F.2d 139, 147 (4th Cir.1990); Abcor Corp. v. AM International, Inc., 916 F.2d 924, 926 (4th Cir.1990); White Bag v. International Paper, 579 F.2d 1384, 1387 (4th Cir.1974). The elements are strongly interrelated. For example, the first element, intent, may be inferred solely from the presence of the second element, predatory or anticompetitive acts. William Inglis & Sons v. ITT Continental, 668 F.2d 1014, 1029 & n. 11 (9th Cir.1981).
 
 
 24
 The trial court dismissed this claim, finding that the Hospital's alleged practice of referring all DME patients to the Equipment Company did not constitute coercive activity, and that in the absence of any coercive behavior there could be no inference that defendants intended to monopolize the DME market.
 
 
 25
 In essence, the district court believed that the defendants' acts, assuming them to be true, could not be coercive or predatory. M & M asserts that, when taken as a whole, the evidence presented supports an inference of coercive behavior. We agree and reverse the trial court's dismissal of the attempted monopolization claim.
 
 
 26
 Since the party resisting the motion for summary judgment is entitled to the benefit of all inferences in its favor based on the evidence presented, we believe that the following facts were before the court: The Hospital operated as the sole hospital in Mason County. Its outgoing patients constituted the majority of all DME consumers in the area. The Equipment Company is a wholly owned subsidiary of the Hospital. The Hospital orders all DME for outgoing patients from the Equipment Company. Patients are not notified of this fact, nor are they affirmatively given a choice as to the DME supplier that will be used. Competitor DME dealers are excluded from the Hospital. Affidavits show that some outgoing patients do eventually discover this "subordination of their freedom of choice," and some have been angered by the Hospital's actions.
 
 
 27
 M & M argues that the defendants' continuation of these policies shows a willingness to make short-term sacrifices in order to drive the plaintiff out of business.
 
 
 28
 Subsequent to the trial court's decision, this court decided the case of Advanced Health-Care, supra. Many of the allegations in that case are similar to those in this case. There, an independent DME distributor brought suit under the Sherman Act against three hospitals which also "steered" their patients to certain affiliated DME distributors in return for a share of the profits. Some of the steering tactics that were alleged in Advanced Health-Care are identical to those alleged by M & M, including the ordering of DME for patients without inquiring whether the patient preferred a different DME distributor. Before discovery commenced, the trial court granted the defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6), finding that such steering could not form the basis of an actionable claim.
 
 
 29
 Reversing, this court held that the key to distinguishing legal competitive acts from predatory ones is whether the acts were based on superior efficiency. Id. at 147 (citing Aspen Skiing Co. v. Aspen Highlands Skiing Corp, 472 U.S. 585, 602-3 (1985).
 
 
 30
 The court concluded that linking the sale of DME to the provision of hospital services was sufficiently predatory to allow an inference of intent to monopolize. Id. See also Key Enterprises of Delaware, Inc. v. Venice Hospital, 919 F.2d 1550, 1558 (11th Cir.1990). In Key Enterprises, the court held that a similar linking of DME to hospital services violated the Sherman Act. The court concluded that the defendant-hospital's practice of allowing only the defendant-DME company to contact hospital patients was an anticompetitive act which "impaired competition in an unnecessarily restrictive way." Accord Associated General Contractors, Inc. v. California State Council of Carpenters, 459 U.S. 519, 528 (1983) ("Coercive activity that prevents its victims from making free choices between market alternatives is inherently destructive of competitive conditions ..."). An act is coercive if it acts to cripple the freedom of choice of consumers. Id. 459 U.S. at 528 n. 18.
 
 
 31
 As stated in Advanced Health-Care, the linking of DME to hospital services constitutes anticompetitive activity which may support an inference of intent to monopolize.
 
 V.
 
 32
 Plaintiff contests the trial court's entry of a protective order limiting its contact with former Hospital patients.
 
 
 33
 During the discovery process, in January of 1989, M & M served a request upon the Hospital for production of a list of patient names and addresses. The Hospital agreed to produce the documents for inspection and, in fact, did produce a voluminous set of documents which M & M reviewed. However, based on the alleged subsequent harassment by M & M of these patients, the defendants refused to produce photocopies of these same documents and moved for a protective order in April, 1989. The defendants sought to enjoin M & M from further contact with the Hospital patients identified through the Hospital records. The trial court granted this protective order.
 
 
 34
 A trial court may limit discovery through the entry of a protective order, under Rule 26(c). Such an order is entered in the sound discretion of the court, and will not be disturbed unless an abuse of this discretion is shown. K.L. Group v. Case, Kay & Lynch, 829 F.2d 909, 915 (9th Cir.1987).
 
 
 35
 Since this case will be returned to the district court for further proceedings, we see no reason to interfere with the district court's future rulings on discovery and the introduction of evidence, leaving those to circumstances as they may develop.
 
 VI.
 
 36
 The final issue on appeal is the trial court's finding that one of plaintiff's antitrust theories was not cognizable under the Sherman Act. The court held that the claim of "monopoly leveraging" did not state an antitrust violation distinct from "attempted monopolization."
 
 
 37
 Monopoly leveraging has been recognized as a distinct antitrust violation by several courts. See Kerasotes Michigan Theatres, Inc. v. National Amusements, Inc., 854 F.2d 135, 136-37 (6th Cir.1988), cert. dismissed, G.K.C. Michigan Theatres, Inc. v. National Amusements, Inc, 490 U.S. 1087 (1989); Grand Light & Supply Co. v. Honeywell, Inc., 771 F.2d 672, 681 (2d Cir.1985). The D.C. Circuit, Ninth Circuit, and this circuit have expressly reserved judgment for a case that squarely raises the issue. Catlin v. Washington Energy Co., 791 F.2d 1343, 1346 (9th Cir.1986); Association for Intercollegiate Athletics for Women v. National Collegiate Athletic Asso., 735 F.2d 577, 586 n. 15 (D.C.Cir.1984); Advanced Health-Care, 910 F.2d at 149 n. 17.
 
 
 38
 The elements that must be proven to show monopoly leveraging are "monopoly power in one market; the use of that power, however lawfully acquired, to foreclose competition, to gain a competitive advantage, or to destroy a competitor in another distinct market; and injury caused by the challenged conduct." Grand Light, 771 F.2d at 681. In sum, it is the action of using already-held monopoly power in one market to force consumers to do business with the monopolist in another market, to the detriment of the consumer. Under the monopoly leveraging theory, a plaintiff need not prove that the defendant attempted to monopolize the secondary market; the plaintiff need only prove that the defendants gained a competitive advantage. Berkey Photo, Inc. v. Eastman Kodak Co., 603 F.2d 263 (2nd Cir.1979), cert. denied, 444 U.S. 1093 (1980).
 
 
 39
 Because we find that the appellant has stated other related Section 2 claims that require a remand of this case for further proceedings, we assume that monopoly leveraging is an independent Section 2 violation separate from monopolization and attempted monopolization. We reserve definitive resolution of that issue until such time as that issue is squarely presented. See Advanced Health-Care, 910 F.2d at 149 n. 17.
 
 VII.
 
 40
 In conclusion, summary judgment entered against plaintiff on its claim under Section 2 of the Sherman Antitrust Act for monopolization is vacated and remanded for further consideration of the summary judgment motion consistent with this opinion. The summary judgment entered against plaintiff on its claim for an attempt to monopolize and for monopoly leveraging under Section 2 of the Sherman Antitrust Act is reversed, and those claims are remanded for further proceedings in the district court. The protective order of the district court on discovery is affirmed.
 
 
 41
 AFFIRMED IN PART, REVERSED IN PART, VACATED, AND REMANDED.
 
 
 42
 BUTZNER, Senior Circuit Judge, joins.
 
 
 43
 K.K. HALL, Circuit Judge, dissents.
 
 K.K. HALL, Circuit Judge, dissenting:
 
 44
 The plaintiff in this case, M & M Medical Supplies, has failed to carry its burden in opposition to the hospital's motion for summary judgment; therefore, I respectfully dissent from the majority's reversal.
 
 
 45
 The majority acknowledges that the first element of a claim of monopolization under § 2 of the Sherman Act is "market power." In order to prove the exercise of market power, a plaintiff must show (1) the existence of some specific, defined geographic market for the product, i.e., the "relevant market," and (2) the exercise of monopoly power by the defendants in that market. Proof of both parts is critical because "[f]ailure to prove either prong will result in the dismissal of plaintiff's entire claim." Slip Op. at 4. Determining the relevant market is a factual inquiry. Twin City Sportservice, Inc. v. Charles O. Finley & Co., 676 F.2d 1291, 1299 (9th Cir.), cert. denied, 459 U.S. 1009 (1982). The plaintiff must define the geographic area in which the suppliers effectively compete. Tampa Electric Co. v. Nashville Coal Co., 365 U.S. 320, 331-32 (1961).
 
 
 46
 The majority states the correct test under Celotex, but then fails to properly apply it to the facts of this case. In opposition to Pleasant Valley's motion for summary judgment, M & M submitted an affidavit of Dr. Blair. An expert's affidavit submitted in opposition to a motion for summary judgment must set forth specific facts to support its conclusions. Fed.R.Civ.P. 56(e); Evers v. General Motors Corp., 770 F.2d 984, 986 (11th Cir.1985). The district court properly rejected Dr. Blair's affidavit because it consisted of mere conclusory assertions and furnished no specific facts in opposition of the motion for summary judgment.
 
 
 47
 Dr. Blair stated in his affidavit that he reviewed the materials produced by Pleasant Valley and conducted a personal investigation. However, he neither quoted any facts from the materials he relied on nor specifically referred to any revealing facts. In addition, Dr. Blair conceded that some overlap into the neighboring Ohio counties occurs but gave no facts to demonstrate how much overlap exists either in absolute or relative terms. In short, the plaintiff failed to show the existence of a specific, defined geographic market, and, therefore, summary judgment was properly entered against M & M.
 
 
 48
 The deficient affidavit affects the claim of attempted monopolization as well. A relevant market must first be established by facts before a plaintiff can establish that a defendant had a specific intent to monopolize it. Without this basic element, this claim must also fail.
 
 
 49
 I would affirm the district court's grant of summary judgment.
 
 
 
 [1]
 DME refers to medical appliances--wheelchairs, oxygen equipment, and walkers--which are often used to aid persons who are convalescing at home after hospitalization
 
 
 [2]
 15 U.S.C. § 2 provides in pertinent part as follows: Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States ... shall be deemed guilty of [an offense against the United States]."
 
 
 [3]
 Monopolization is present where two elements are satisfied:
 (1) the defendant exercised market power (which, as already noted, is further composed of the exercise of monopoly power over a relevant product within a relevant market), and
 (2) the defendant willfully acquired or maintained this market power. United States v. Grinell Corp., 384 U.S. 563, 570-71 (1966).
 The trial court found that M & M had failed to prove the prongs of the first element, and therefore did not analyze the second element.