ADCOM, INC., et al.

v.

NOKIA, CORP., et al.

Civ. A. No. 90–4088.

United States District Court,
E.D. Louisiana.

Jan. 8, 1993.

**82**

Sidney Daniel Meeks, Terrence Kent Knister, Alexander McVoy McIntyre, Jr., Abbott & Meeks, New Orleans, LA, for plaintiffs.

Alan Harry Goodman, Joseph N. Mole, Lemle & Kelleher, New Orleans, LA, Bernard J. Rosenthal, David D. Howe, Gilbert, Segall & Young, New York City, for defendants.

William R. Campbell, Jr., Michael S. Fawer, P.L.C., New Orleans, LA, Michael Seth Fawer, Michael S. Fawer, P.L.C., Dallas, TX, C. Coleman Bird, Pepper, Hamilton & Scheetz, Washington, DC, for CUE Paging Corp.

Bruce S. Kingsdorf, Cleveland, Barrios, Kingsdorf & Casteix, New Orleans LA, for Axcess USA Corp.

## ORDER AND REASONS FOR ENTRY

CLEMENT, District Judge.

Plaintiff Adcom, Inc., and its franchises, plaintiffs Cutrone Communications, Inc., Great Southern Communications, Inc., NOLA Communications, Inc., and Conrad Communications, Inc. (collectively referred to as Adcom) contend that defendants Nokia–Corporation, Nokia–Mobira Oy, Nokia–Mobira, Inc., Nokia Data Communication Corporation, and Cue Paging Corporation (collectively referred to as Nokia), acquired their only competitor, defendant Cue Paging Corporation (previously Diversicom), and then cut off their supply of FM subcarrier paging receivers, in breach of contract and in order to monopolize trade. In its amended complaint, Adcom charged Nokia with monopolization and attempted monopolization of the FM subcarrier radio paging market in the United States in violation of § 2 of the Sherman Act;[1] discriminatory pricing in violation of § 2(a) of the Robinson–Patman Act, which amended § 2 of the Clayton Act;[2] unfair trade practices in violation of Louisiana's Unfair Trade Practices and Consumer Protection Law;[3] breach of contract and breach of implied covenant of good faith and fair dealing in violation of Louisiana or Florida law. Nokia has filed a joint motion seeking summary judgment on each claim for relief asserted by Adcom.

In this order, the court resolves two issues only. First, having found that Adcom has produced absolutely no evidence to sat-

---

1. 15 U.S.C. § 2.

2. 15 U.S.C. § 13(a).

3. La.Rev.Stat. §§ 51:1401 *et seq.*

isfy an essential element of its Robinson–Patman claim, the court grants Nokia's motion for summary judgment on that issue. And second, the court finds, as a matter of law, that Adcom cannot maintain its claim that Nokia violated Sherman § 2 by using its alleged market power in the market for FM subcarrier paging receivers to gain a competitive advantage in the relevant market for paging services, in the absence of monopolization or an attempt to monopolize that market. Nokia's motion for summary judgment on Adcom's remaining Sherman § 2 claims—monopolization and attempted monopolization—remain under advisement.

### A. Robinson–Patman Price Discrimination

Adcom alleged that Nokia or Cue sold pagers to Cue's affiliates or distributors at a lower price than they sold pagers to Adcom.[4] When Nokia filed its memorandum in support of its motion for summary judgment, there was no evidence in the record of any contemporaneous transaction in which Nokia or Cue favored Cue's affiliates with lower priced pagers. Accordingly, citing this absence of evidence, Nokia moved for summary judgment on the Robinson–Patman claims.

In its opposition memorandum, however, Adcom clarified its contention and alleged that Nokia or Cue sold Cue's affiliates the MBS–45 model pager at a lower price than it (Adcom) paid, either under its contract with Nokia ($230 per pager), or later, when certain of the plaintiffs bought pagers from Nokia ($310 per pager plus customs and shipping). To support this allegation, Adcom offered the affidavit of William Fortney, the former vice president of First Continental Communications, Inc. (FCCI). FCCI, which is located in Indiana, was an

affiliate of Cue in 1987. Fortney's affidavit states in relevant part that, between June and October, 1987, FCCI purchased various quantities of MBS–45 pagers from Cue for $250.00 per pager.

▪ Nokia responded by arguing that Fortney's affidavit still did not meet Adcom's burden under Fed.R.Civ.P. 56 of demonstrating the existence of a factual question on an essential element of its Robinson–Patman claim. It pointed out that "to establish the requisite competitive injury in a secondary-line case, plaintiff must first prove that, as the disfavored purchaser, it was engaged in actual competition with the favored purchaser(s) as of the time of the price differential."[5] *Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*, 842 F.2d 578, 584 (2d Cir.1987), *citing, inter alia, Lupia v. Stella D'Oro Biscuit Co.*, 586 F.2d 1163, 1170 (7th Cir.1978). Hence, Nokia concluded, the absence of evidence in the record to establish that FCCI and Adcom competed in the same product and geographic market mandates summary judgment in its favor. Adcom's memorandum in reply did not address this issue.

▪ To maintain its § 2(a) claim, Adcom must establish the likelihood of competitive injury resulting from the alleged price discrimination. *Best Brands*, 842 F.2d at 584. A competitive injury requires the existence of a "competitive nexus" between the favored and disfavored purchasers. Accordingly, numerous cases, in this and other circuits, have held that a plaintiff alleging a secondary-line injury must prove that the defendant seller made a sale to two different buyers at the same functional level of competition within the same geographic market. *See Collins Oil Co. v. Tenneco, Inc.*, 556 F.2d 1274 (5th Cir.1977)

**4.** Section 2(a) of the Robinson–Patman Act provides in pertinent part: "It shall be unlawful for any person engaged in commerce ... to discriminate in price between different purchasers of commodities of like grade and quality ... where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly...." 15 U.S.C. § 13(a).

**5.** Injury under section 2(a) of the Robinson–Patman Act is almost always one of two types: primary-line or secondary-line. *See Eximco, Inc. v. Trane Co.*, 737 F.2d 505, 515 (5th Cir.1984). Although Adcom never specified the precise type of injury it alleges, the facts indicate that this is a secondary-line claim, i.e., sales to favored purchasers at a lower price than to the disfavored purchaser. A primary-line claim, by contrast, involves competitors of the seller.

(per curiam) (affirming directed verdict on ground that plaintiff failed to prove it was in competition with favored customers); *Eximco*, 737 F.2d at 515; *Olympia Co., Inc. v. Celotex Corp.*, 597 F.Supp. 285, 296 (E.D.La.1984), *aff'd*, 771 F.2d 888 (5th Cir. 1985); *see also Best Brands*, 842 F.2d at 585.

Here, it is undisputed that none of the plaintiffs has claimed to have engaged in business outside of the Louisiana–Texas area.[6] Indeed, in its second set of interrogatories Nokia actually asked the plaintiffs whether it was their contention that they competed with one or more Cue affiliates.[7] Plaintiffs responded that they competed with Cue affiliates only in Louisiana and Texas. Moreover, Fortney does not state in his affidavit that in 1987 FCCI competed with Adcom or any of Adcom's franchises—a conspicuous and damning omission on Adcom's part. Therefore, finding that Adcom's Robinson–Patman claims have collapsed for failure of proof, the court grants the Nokia defendants summary judgment on those claims.

### B. The "Monopoly Leveraging" Theory

 Adcom urges two distinct claims under Sherman § 2: (1) a "traditional" claim for monopolization requiring possession of market power in the relevant market, *see U.S. v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966); and (2) a less established claim that Nokia leveraged its market power in the FM subcarrier pager market to gain a competitive advantage in some market for paging services. Under this theory, Adcom notes, it need not "offer evidence, much less prove, that defendants possessed the traditional elements of monopoly power" in the relevant market for paging services to establish a violation under Sherman § 2.

The foundational decision for Adcom's leveraging theory is *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 275 (2d Cir.1979), in which the Second Circuit determined that "a firm violates § 2 of the Sherman Act by using its monopoly power in one market to gain a competitive advantage in another, albeit without an attempt to monopolize the second market." The other circuits that have addressed this theory disagree on whether *Berkey Photo*'s holding is sound. The Sixth Circuit elected to follow *Berkey Photo* in *Kerasotes Michigan Theatres, Inc. v. National Amusements, Inc.*, 854 F.2d 135 (6th Cir.1988). The Third and Ninth Circuits, on the other hand, have forcefully rejected both *Berkey Photo* and *Kerasotes, see Fineman v. Armstrong World Industries, Inc.*, 980 F.2d 171, 204–06 (3d Cir.1992); *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 547 (9th Cir.1991). The Fifth Circuit has not had an opportunity to consider the issue.

The court finds the reasoning in *Fineman* and *Alaska Airlines* unimpeachable. First, and most importantly, the court believes, as did the Third Circuit, that *Berkey Photo*'s leveraging theory "does violence to the text of the Sherman Act and decimates" Congress' purposeful distinction between concerted conduct that "restrains trade" in Sherman § 1 and unilateral conduct that "monopolizes or attempts to monopolize" in Sherman § 2. *See Fineman*, 980 F.2d at 205–06. Additionally, as the Ninth Circuit points out, *Berkey Photo*'s leveraging theory makes no economic sense because "[t]he anticompetitive dangers that implicate the Sherman Act are not present when a monopolist has a lawful monopoly in one market and uses its power to gain a competitive advantage in the second market."[8] *Alaska Airlines*, 948 F.2d at 548.

Accordingly,

---

6. *See* Adcom's Responses to Interrogatory No. 3(1) of Defendants' First Set of Interrogatories and Second Request for the Production, Inspection, and Copying of Documents, served November 12, 1992.

7. See Interrogatory No. 40.

8. This court notes, as did *Alaska Airlines*, that different issues might exist in those cases in which "a regulated monopolist (usually a natural monopolist) seeks to evade regulations which limit profits in the monopoly market by creeping into adjacent, unregulated markets." 948 F.2d at 549 n. 17.

IT IS ORDERED that Nokia's motion for summary judgment on the Adcom's claims of price discrimination in violation of the Robinson–Patman Act is GRANTED; and it is further ordered that Adcom may not advance its contention that Nokia violated Sherman § 2 by using its market power in the FM subcarrier paging receiver market to obtain a mere competitive advantage in the relevant market for paging services.